GILMER *v.* STONE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Submitted December 20, 1886. — Decided March 7, 1887.

A, a resident in Irish Grove, Illinois, died there, leaving a will by which, after bequeathing his library to the Presbyterian church of Irish Grove, and $500 for the erection of another Presbyterian church in Illinois, and $50 to be paid on the minister's salary of the Presbyterian church of Irish Grove for 1884, and some other bequests, he bequeathed and devised the remainder of his estate "to be equally divided between the board of foreign and the board of home missions." The Presbyterian Church in the United States of America has a corporate "Board of Foreign Missions" and a corporate "Board of Home Missions;" but it was agreed by counsel that several other religious bodies in the United States have similar organizations, for the same purposes. *Held,* that there was a latent ambiguity in the will respecting the object of the residuary gift, which ambiguity could be removed by extrinsic evidence; and that the evidence introduced on that point, taken in connection with the other bequests in the will for the benefit of Presbyterian churches, showed that the testator,

in making the residuary gift, had in his mind the Board of Foreign Missions and the Board of Home Missions of the Presbyterian Church of the United States of America, of which he was a member and an officer.

The restriction upon the right of a congregation, formed for religious purposes, to receive "land not exceeding in quantity . . . ten acres," which is imposed by § 42 of the act of the legislature of Illinois of April 18, 1872, applies to congregations incorporated for the object named in § 35 of that act, viz.: "the purpose of religious worship;" and does not affect foreign benevolent or missionary societies incorporated either with the objects named in the incorporation of the Board of Foreign Missions of the Presbyterian Church in the United States, or with the objects named in the incorporation of the Board of Home Missions of that church, although both organizations are important agencies in the general religious work of that church.

*Christian Union* v. *Yount*, 101 U. S. 352, commented upon, explained, and affirmed.

BILL in equity to set aside a will and its probate for uncertainty so far as they related to the residuary devise and bequest. Decree, dismissing the bill, from which plaintiff appealed. The case is stated in the opinion of the court.

*Mr. D. T. Littler*, *Mr. L. A. Whipp*, and *Mr. R. E. Lewis* for appellant cited: 1 Jarman on Wills, Randolph & Talcott ed. 403 n. 3, 404 n.; Story Eq. Jur. §§ 1158, 1183; Perry on Trusts, §§ 116, 713; *Bridges* v. *Pleasants*, 4 Iredell Eq. 26;[1] *Fontain* v. *Ravenel*, 17 How. 369; *Wheeler* v. *Smith*, 9 How. 55, 79; *Taylor* v. *Keep*, 2 Bradwell, 368; *Allen's Executors* v. *Allen*, 18 How. 385; *Runyan* v. *Coster*, 14 Pet. 122; *Lathrop* v. *Commercial Bank*, 8 Dana, 114; Laws of Illinois, 1859, p. 20, Gross. Rev. 124; Rev. Stat. Ill. 1845, c. 35, § 44; *St. Peter's Roman Catholic Congregation* v. *Germain*, 104 Ill. 440; Laws Illinois, 1872, c. 32, § 42; *Stevens* v. *Pratt*, 101 Ill. 206.

*Mr. James McCartney* for appellee cited: 2 Phill. Ev. 745–756; Wigram Extraneous Ev. 118, 138; 1 Jarman on Wills, c. 13 and note; *King* v. *Ackerman*, 2 Black, 408; *Bradley* v. *Rees*, 113 Ill. 327; *Heuser* v. *Harris*, 42 Ill. 425; *Hinckley* v. *Thatcher*, 139 Mass. 477; *Allen's Executors* v. *Allen*, 18 How. 385; *Christian Union* v. *Yount*, 101 U. S. 352; *St. Peter's Roman Catholic Congregation* v. *Germain*, 104 Ill. 440; *Vidal* v.

---

[1] S. C. 44 Am. Dec. 94.

*Girard,* 2 How. 127; *Hayward* v. *Davidson,* 41 Ind. 212; *De Camp* v. *Dobbins,* 29 N. J. Eq. (2 Stewart) 36; *Baker* v. *Neff,* 73 Ind. 68; *Alexander* v. *Tolleston Club,* 110 Ill. 65.

MR. JUSTICE HARLAN delivered the opinion of the court.

Robert Gilmer, late of Irish Grove, Menard County, Illinois, died December 31, 1883, having made a last will by which he disposed of his entire estate, consisting of about four thousand dollars in personal property, and from three to four hundred acres of land in that state. The eleventh clause of the will is in these words: "I also, after paying all debts and claims against my estate, bequeath and devise the remainder of my estate to be equally divided between the board of foreign and the board of home missions." The object of the present suit is to obtain a decree declaring that clause to be void, and directing the estate of the testator, after meeting the debts and the bequests contained in other clauses to be paid to the complainant, the uncle and only heir-at-law of the decedent.

The "Board of Foreign Missions of the Presbyterian Church in the United States of America" and the "Board of Home Missions of the Presbyterian Church in the United States of America" — corporations created under the laws of New York — severally appeared, were made defendants, and filed answers, each claiming the right to share in the devise in the eleventh clause of the will. The executors admit the justice of these claims, but ask the direction of the court in the premises. To these answers a general replication was filed; and, the cause having been heard upon the pleadings and proofs, the bill was dismissed with costs.

It is agreed in the case that the Baptist, Methodist, Episcopal and other churches, like the Presbyterian Church in the United States of America, have boards of home and foreign missions; consequently, it is contended, the eleventh clause of the will is void for uncertainty as to the donee and the purposes of the gift. In this view we do not concur. It is undoubtedly the rule, in respect to the testamentary disposition of property, real and personal, that uncertainty either as to the subject or object of a devise will be fatal to its validity. But that rule has

no application here; for, if there were no other facts in the case than that there are numerous boards which may be generally described by the words, the "board of foreign missions," and "the board of home missions," the devise in the eleventh clause would not fail. With respect to charities, gifts may be good which, with respect to individuals, would be void; "and where there are two charities of the same name, the legacy will be divided between them, if it cannot be ascertained which was the intended object." 1 Jarman on Wills, 376. Can it be ascertained by competent evidence which of these various boards were the objects of the testator's bounty?

In the fourth clause of the will, the testator bequeathed his library to the Presbyterian church of Irish Grove; in the ninth, five hundred dollars toward the erection of a Presbyterian church in Greenview, Illinois, provided the same was built within two years from the date of the will; otherwise, the money should revert to his estate; and in the tenth, he bequeathed fifty dollars to be paid on the minister's salary of the Presbyterian church of Irish Grove for the year 1884.

And there was extrinsic evidence to the following effect: That the testator had been for many years a member and ruling elder of the Irish Grove Presbyterian Church, one of the local congregations of the Presbyterian Church in the United States of America; that collections were annually taken up in that congregation for the various boards of that church, including its Boards of Foreign and Home Missions; that while it was announced from the pulpit that collections would be taken for the Board of Foreign Missions or the Board of Home Missions, without, in words, naming the Presbyterian Church, all such collections, with the knowledge and assent of the church session, of which the testator was an active and zealous member, were, without exception, sent to the officers of the Presbyterian Boards of Foreign and Home Missions in New York City, and regular reports thereof made to the session; that the testator took especial interest in the work of those particular boards and uniformly contributed thereto; and that he did not, so far as his pastor or associates in the church session knew, make contributions to the societies of any other

church, except to the Bible Society, which was sustained by several religious organizations.

Of the competency of this evidence there can be no doubt. The purpose of it was to place the court, as far as possible, in the situation in which the testator stood, and thus bring the words employed by him into contact with the circumstances attending the execution of the will. Such proof does not con- tradict the terms of that instrument, nor tend to wrest the words of the testator from their natural operation. It serves only to identify the institutions described by him as "the board of foreign and the board of home missions;" and thus the court is enabled to avail itself of the light which the cir- cumstances, in which the testator was placed at the time he made the will, would throw upon his intention. "The law is not so unreasonable," says Mr. Wigram, "as to deny to the reader of an instrument the same light which the writer enjoyed." Wigram on Wills, 2d Amer. ed. 161. The proof made a case of latent ambiguity. Such an ambiguity may arise, "either when it names a person as the object of a gift or a thing as the subject of it, and there are two persons or things that answer such name or description; or, secondly, it may arise when the will contains a misdescription of the object or subject." *Patch* v. *White*, 117 U. S. 210, 217. In the same case it was observed that, "as a latent ambiguity is only dis- closed by extrinsic evidence, it may be removed by extrinsic evidence." See, also, *Allen's Executors* v. *Allen*, 18 How. 385, 393; *Hinckley* v. *Thatcher*, 139 Mass. 477; *Breckenridge* v. *Duncan*, 2 A. K. Marsh. (Ky.) 50, 51;[1] *Morgan* v. *Burrows*, 45 Wis. 211, 217; *Brewster* v. *McCall*, 15 Conn. 273; *Tilton* v. *Society*, 60 N. H. 377, 382; 1 Jarman on Wills, 423, 431; 1 Greenl. Ev. § 290.

Construing, then, the will with reference to the extrinsic evidence of the uniform relations of the testator to the subject of foreign and home missions, and to certain societies engaged in that kind of work, it is not to be doubted that, in the eleventh clause, he had in mind the Boards of Foreign and Home Missions

---

[1] *S. C.* 12 Am. Dec. 359.

of the general religious society or organization of which he was a member and officer. The words of the will very well apply to such an object, and, therefore, in so interpreting its provisions, no violence is done to the language employed by the testator.

It is, also, contended that the Boards of Foreign and Home Missions of the Presbyterian Church in the United States of America are foreign religious societies, of foreign societies organized for religious purposes, and, as such, cannot, under the laws of Illinois, take exceeding ten acres of land each, and that the devise in the eleventh cause, being of more than three hundred acres of land jointly, is void and must fail.

In the case of *Christian Union* v. *Yount*, 101 U. S. 352, 360, decided in 1879, we considerd the question whether a conveyance made in 1870, by a citizen of Illinois, of real estate there situated, of the value of $10,000, to the American and Foreign Christian Union, a New York corporation, was void under the laws of Illinois — the object of that corporation being, "by missions, colportage, the press, and other appropriate agencies, to diffuse and promote the principles of religious liberty and a pure evangelical Christianity, both at home and abroad, wherever a corrupt Christianity exists." The validity of the conveyance was sustained upon the ground that the law of Illinois, as it existed in 1870, did not preclude a benevolent or missionary corporation of another state, being thereunto authorized by its own charter, from taking title to real estate within her limits, by purchase, gift, devise, or in any other manner.

It is, however, insisted that the force of that decision is weakened, if not destroyed, by the failure of the court to refer to § 44 of c. 24 of the Revised Statutes of 1845, making it lawful for "the members of any society or congregation," theretofore formed or thereafter to be formed, "for purposes of religious worship," to "receive by gift, devise or purchase, a quantity of land not exceeding ten acres, and to erect or build thereon such houses and buildings as they may deem necessary for the purposes aforesaid, and to make such other use of the land and make such other improvements thereon as

may be deemed necessary for the comfort and convenience of such society or congregation." Rev. Stat. Ill. 1845, p. 120. Counsel overlook the fact that the court, in *Christian Union* v. *Yount*, referred incidentally, and as indicating the general course of legislation in Illinois, to the like provision in the act of 1872. No comment was made upon that provision, for the reason that it had no application to the case; there being no claim, as there could not well have been, that the American and Foreign Christian Union was, within the meaning of the statute, a society or congregation "for purposes of religious worship."

In *St. Peter's Roman Catholic Congregation* v. *Germain*, 104 Ill. 440, the Supreme Court of the state held that the foregoing section of the act of 1845 was not repealed by the act of March 8, 1869, providing "for the holding of Roman Catholic churches, cemeteries and other property," but was displaced by the 42d section of the act of April 18, 1872, (c. 32 of the Revision of 1874,) which last section, however, the court said, was substantially the same as the 44th section of the act of 1845, and to be regarded as, in effect, merely continuing the latter in force.

We have, therefore, to inquire whether the devise in question is void under the act of April 18, 1872. That act makes provision for the formation of corporations for any lawful purpose, except banking, insurance, real estate brokerage, the business of loaning money, and the operation of railroads other than horse and dummy railroads. It also makes provision for the incorporation of societies, corporations, and associations for any lawful purpose, not for pecuniary profit, "capable of taking, purchasing, holding and disposing of real and personal estate for purposes of their organization." Secs. 29, 31.

The act proceeds:

"SEC. 35. The foregoing provisions shall not apply to any religious corporation; but any church, congregation or society formed for the purpose of religious worship, may become incorporated in the manner following, to wit: . . .

"SEC. 41. Upon the incorporation of any congregation, church or society, all real and personal property held by any

person or trustees for the use of the members thereof, shall immediately vest in such corporation and be subject to its control, and may be used, mortgaged, sold and conveyed the same as if it had been conveyed to such corporation by deed; but no such conveyance or mortgage shall be made so as to affect or destroy the intent or effect of any grant, devise or donation that may be made to such person or trustee for the use of such congregation, church or society.

" Sec. 42. Any corporation that may be formed for religious purposes under this act or under any law of this state for the incorporation of religious societies, may receive by gift, devise or purchase, land not exceeding in quantity (including that already held by such corporation) ten acres, and may erect or build thereon such houses, buildings or other improvements as it may deem necessary for the convenience and comfort of such congregation, church or society, and may lay out and maintain thereon a burying ground; but no such property shall be used except in the manner expressed in the gift, grant or devise, or, if no use or trust is so expressed, except for the benefit of the congregation, church or society for which it was intended."

The 45th section permits any congregation, church, or society incorporated under the act, to receive by grant, devise or bequest, real estate, not exceeding forty acres, for the purpose of holding camp-meetings. Rev. Stat. 1874, pp. 292, 293.

Assuming for the purposes of this case only, that a church, congregation, or society formed under the laws of another state, for purposes of religious worship in that state, could not lawfully receive by gift, devise or purchase, land in Illinois, in excess of the quantity which may be received in either of those modes by a similar corporation formed under the laws of Illinois, we are satisfied that the sections last quoted from the act of 1872 do not embrace corporations of the class to which these Boards of Foreign and, Home Missions belong. The Board of Foreign Missions of the Presbyterian Church in the United States of America was formed " for the purpose of establishing and conducting Christian missions among the unevangelized or pagan nations and the general diffusion

of Christianity." Its power to hold real or personal estate in New York is restricted to such quantity as will produce an annual income not exceeding $20,000. The object of the Board of Home Missions of that church is "to assist in sustaining the preaching of the Gospel in feeble churches and congregations in connection with the Presbyterian Church in the United States, and generally to superintend the whole of home missions in the behalf of such church as the General Assembly shall, from time to time, direct; and also to receive, take charge of, and disburse all property and funds which, at any time, and from time to time, may be intrusted to said church or said board for home missionary purposes." It cannot take and hold real or personal property, the annual income of which shall exceed $200,000.

While these boards are important agencies in aid of the general religious work of the Presbyterian Church in the United States of America, neither of them is, in any proper sense, or in the meaning of the 35th section of the act of 1872, a church, congregation, or society formed for the purpose of *religious worship*. The counsel for the plaintiff in error seem to lay stress upon the more general words, "formed for religious purposes," in the 42d section of the act; but manifestly the other parts of the same section, and previous sections, show that the only corporations intended to be restricted in the ownership of land to ten acres, were those formed for the purpose of "religious worship," and not to organizations commonly called benevolent or missionary societies. The reasons of public policy which restrict societies, formed for the purpose of religious worship, in their ownership of real estate, do not apply at all, or, if at all, only with diminished force, to corporations which have no ecclesiastical control of those engaged in religious worship, and cannot prescribe the forms of such worship, nor subject to ecclesiastical discipline those who fail to conform to the rules, usages, or orders of the religious society of which they are members.

This conclusion does not, in the slightest degree, conflict with the decision in *St. Peter's Roman Catholic Congregation* v. *Germain.* That was the case of a conveyance of about eighty

acres of land directly to a congregation or society "formed for the purpose of religious worship," as distinguished from a benevolent or missionary organization. The court held that, under the legislation of Illinois, "a religious corporation is authorized to receive or acquire lands to the extent of ten acres and no more. Any amount in excess of that is expressly forbidden by statute, and it follows that all conveyances, deeds, or other contracts made in violation of this prohibition, are absolutely void."

As the eleventh clause was intended to pass, and was valid for the purpose of passing, to the Boards of Foreign and Home Missions of the Presbyterian Church in the United States of America the estate thereby devised, the decree must be affirmed; and it is so ordered.

*Affirmed.*