BURTON A. HITCHCOCK, Exr., *et al.* Appellees, *vs.* THE
  BOARD OF HOME MISSIONS OF THE PRESBYTERIAN
  CHURCH *et al.*—(JEFFERSON J. GREENE *et al.* Appel-
  lants.)

*Opinion filed June 18, 1913—Rehearing denied October 8, 1913.*

1. WILLS—*court should, if possible, give effect to intention of
testatrix to devote residue of estate to charitable purposes.* Where
it clearly appears from the provisions of the will that it was the
intention of the testatrix to devote the residue of her estate to
charitable purposes, the court should give such intention effect if
it can do so without doing violence to the rules of construction.

2. SAME—*what bequests are gifts for charitable purposes.* Be-
quests of the residue of the estate of the testatrix "to be equally
divided between Home Missions and Foreign Mission and for edu-
cation of poor children," are gifts for charitable purposes, and
must be considered according to the rules applicable to such gifts.

3. SAME—*gifts to charity need not have same certainty as gifts
to individuals.* The same degree of certainty is not required in
gifts to charity as in gifts to individuals, and uncertainty as to the
object or subject of the gift is not necessarily fatal to its validity.

4. SAME—*when evidence is admissible to show what society or
institution was intended.* Where there is a gift to a society for
charity without clearly specifying the particular society, and there
are two or more societies carrying on the same character of char-
ity, a latent ambiguity exists, and extrinsic evidence is admissible
to determine the particular society intended by the donor.

5. SAME—*bequests to "Home Missions and Foreign Mission"
are valid gifts to charity.* Bequests to "Home Missions and For-
eign Mission" are valid gifts to charity, to be administered by the
respective boards incorporated for those purposes in the church
which the evidence of extrinsic facts and circumstances shows was
the society intended by the testatrix to have control of the fund.

6. SAME—*equity will not allow a trust to fail for want of a
trustee.* In Illinois, where the Statute of Charitable Uses is in
force, a gift to charity, if the object is definite, will not be al-
lowed to fail for want of a trustee, and in such case a court of
equity will administer the trust or appoint a trustee to administer it.

7. SAME—*bequest "for education of poor children" will be up-
held.* A bequest "for the education of poor children" is a valid

charitable trust, and although no trustee is appointed with power to select the beneficiaries from the class so designated, the trust will not for that reason fail but will be administered through a trustee appointed by a court of chancery.

8. SAME—*to sustain a charitable trust without a trustee being named does not require exercise of prerogative power.* To sustain a gift to charity though no trustee was appointed or provided for by the donor does not require the exercise of any prerogative power of a nature sometimes exercised in England, but requires only the exercise of ordinary jurisdiction of a court of chancery.

9. SAME—*when court should not designate any particular institution to administer trust.* Where the extrinsic evidence does not clearly show that the testatrix, in making a bequest "for the education of poor children," had in mind any particular society or institution to administer the trust or any particular members of the class designated as "poor children," the selection of the particular beneficiaries from the class should be left to the trustee appointed by the court.

10. SAME—*how fund bequeathed to charity should be divided.* Where the testatrix directs the residue of her estate "to be equally divided between Home Missions and Foreign Mission and for education of poor children," such residue should be divided into three equal parts and each of the three mentioned charities should receive one part.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

JUDSON STARR, and WINSLOW EVANS, for appellants.

P. J. LUCEY, Attorney General, and JOHN M. ELLIOTT, for appellee the Women's Christian Home Mission; FRANK T. MILLER, for appellee Burton A. Hitchcock, Exr.; JACK, IRWIN, JACK & MILES, for appellees the Board of Home Missions and Board of Foreign Missions of the Presbyterian Church; LUTHER C. HINCKLE, for appellee the Troy Orphan Asylum; CHARLES C. DUTCH, guardian *ad litem* for Edna Greene and Thomas O. Clark.

Mr. JUSTICE FARMER delivered the opinion of the court:

Burton A. Hitchcock, as executor of the last will and testament of Phebe Rose, deceased, filed a bill in the circuit court of Peoria county to have certain paragraphs of said will construed and asked that a trustee be appointed to receive bequests therein made.

Phebe Rose died September 14, 1904. She was, and had been for many years before her death, a widow. She left no children or descendants of children surviving her. She owned a house and lot in Dunlap, Peoria county, valued at about $1000, and personal property, consisting chiefly of notes secured by mortgages, valued at $117,000. She executed her last will and testament May 5, 1888, and appointed Burton A. Hitchcock executor. The executor was directed to sell the real estate. The will is in the handwriting of the testatrix and contains twenty-four paragraphs. After giving directions in regard to her burial and making provision for the payment of her debts, nineteen bequests are made to relatives and friends in sums from $500 to $2000 each. The twenty-second paragraph is as follows:

"*Twenty-second*—It is my will after what I have named be satisfied, what left be equaly divided 'between Home Missions and Foreign Mission and for education of poor children."

The twenty-third paragraph gave her brother Jefferson J. Greene's children certain articles of her jewelry. The rest of her jewelry she directed to be divided among the rest of her nieces, with the exception that her watch and chain were to go to Wyatt Greene. The paragraph concludes: "The rest of my things, beds, beding, silver, furniture, what ever it may be, devided amongst all the nieces the best it can be."

The heirs, legatees and others claiming an interest under the twenty-second paragraph of the will, including the Board of Home Missions of the Presbyterian Church, the Board of Foreign Missions of the Presbyterian Church,

the Board of Home Missions and Church Extension of the Methodist Episcopal Church, the Board of Foreign Missions of the Methodist Episcopal Church, the Women's Christian Home Mission of the County of Peoria, the Troy Orphan Asylum of Troy, New York, the Farm and Trade School of the Commonwealth of Massachusetts, and William H. Stead, as Attorney General, were made defendants to the amended supplemental bill or intervened and became defendants.

The answer of the two heirs who are appellants here, Jefferson J. Greene and Langford R. Greene, averred that the twenty-second paragraph of the will was uncertain and indefinite and that no part of the estate passed under it; that the estate attempted to be devised by the said twenty-second paragraph was intestate estate, and denied the necessity of appointing a trustee. Certain nieces of the testatrix who were minors answered by guardian *ad litem,* claiming that the twenty-second paragraph was invalid; that the twenty-third paragraph disposed of the residuary estate, and that the testatrix's nieces were entitled to the whole of said residuary estate. The Board of Home Missions of the Presbyterian Church and the Board of Foreign Missions of the Presbyterian Church, shown by the evidence to be duly incorporated societies for carrying on the missionary work of the church in home and foreign lands, each claimed one-third of the residuary estate. The Women's Christian Home Mission of the County of Peoria, an organization or society which conducted a home for the friendless for the care of children, and the Troy Orphan Asylum of Troy, New York, filed intervening petitions, which were allowed to stand as answers to the bill, each claiming the legacy for the education of poor children. The Attorney General also claimed the legacy for the education of poor children should be applied to the education of poor children in the State of Illinois. No other person or organization is now claiming any right or interest in the bequest.

After the issues were made up the cause was referred to the master in chancery to take the proof and report his conclusions of law and fact. The master took the testimony and filed his report, finding that the bequests in the twenty-second paragraph of the will were bequests for specific charities; that the term "home missions" had reference to the charity in charge of and conducted by the Board of Home Missions of the Presbyterian Church in the United States of America; that the term "foreign missions" had reference to the charity in charge of and conducted by the Board of Foreign Missions of the Presbyterian Church in the United States of America, and that each of them was entitled to one-third of the residuary estate. The master further found that the bequest "for the education of poor children" was a bequest for a specific charitable use, but that it could not be carried into effect except by means of a trustee appointed for that purpose, and since testatrix had not appointed such trustee in her will one should be appointed by the court, and that one-third of the residuary estate should be paid to said trustee, to be expended by him for the education of poor children under the supervision of the court. Objections filed to the findings of the master were overruled by him and were renewed as exceptions before the chancellor. The findings of the master were sustained, except as to the division of the residue of the estate into three equal parts. The court entered a decree directing the residuary estate to be divided into three parts, one-fourth to be given to the Board of Home Missions of the Presbyterian Church, one-fourth to the Board of Foreign Missions of the Presbyterian Church and one-half to a trustee to be appointed by the court, to be used for the education of poor children. From this decree an appeal was prosecuted to the Appellate Court for the Second District, which court affirmed the decree of the circuit court, except that it directed the residuary estate be divided into three equal parts and one-third be given to each of the boards of

missions designated by the decree and one-third to a trustee to be appointed by the circuit court, the net income from the fund for the education of poor children to be expended for that purpose through the board of trustees of the Troy Orphan Asylum of Troy, New York. The case comes to this court upon a certificate of importance granted by the Appellate Court.

The principal contentions of appellants are: (1) That the twenty-second paragraph of the will is void for uncertainty, for the reason that the bequests to home missions, foreign missions and for the education of poor children are bequests to charitable causes, purposes or uses, and are not made to specific persons or corporations; (2) that no latent ambiguity exists in the will and parol evidence to aid in its construction is not admissible; (3) that the gifts are invalid because no scheme or plan for carrying out the charities is presented by the testatrix, no trustee appointed by her, no power given to the court to appoint one and no trust declared by the will; (4) that the courts of this State have no power to exercise the prerogative rights of the king as *parens patriæ*, and hence cannot, under the *cy pres* doctrine, appoint a trustee or charities to receive the gifts.

There can be no question that it was the intention of the testatrix that the remainder of her estate after the satisfaction of the specific bequests mentioned should be devoted to charitable purposes and uses, and it is the duty of the court to give effect to such intention if it can do so without doing violence to the rules of construction. The same degree of certainty is not required in gifts to charity as to individuals, and uncertainty as to the object or subject of the devise is not necessarily fatal to its validity. (*Gilmer* v. *Stone*, 120 U. S. 586; Story's Eq. Jur. 1169.) The bequests in the twenty-second paragraph are gifts to charity and must be considered according to the rules applicable to such gifts. It is a matter of common knowledge that most all religious denominations maintain missions or mission-

ary societies for the advancement of the cause of religion. When there is a gift to a society for charity without clearly describing the particular society, and there are two or more societies carrying on the same charity, a latent ambiguity exists, and extrinsic evidence is admissible for the purpose of determining the society or institution intended by the donor at the time of the execution of the will. The rule also applies where there is a mistake in the name or description of the legatee or devisee, whether an individual or corporation. (*Woman's Union Missionary Society* v. *Mead,* 131 Ill. 338; *Domestic and Foreign Missionary Society's Appeal,* 30 Pa. St. 425; *Board of Missions* v. *Scovell,* 3 Demarest, 516; *Tilton* v. *American Bible Society,* 60 N. H. 377; *Bowman* v. *Domestic and Foreign Missionary Society,* 100 App. Div. (N. Y.) 29; affirmed 182 N. Y. 494; *Faulkner* v. *National Sailors' Home,* 155 Mass. 458.) In *Gilmer* v. *Stone, supra,* the legacy was "to the Board of Home Missions and the Board of Foreign Missions." Extrinsic evidence was held competent to show that the testator had in mind the Board of Home Missions of the Presbyterian Church and the Board of Foreign Missions of the Presbyterian Church of the United States of America, both of said boards being corporate bodies of said church.

Testimony admitted over objection of appellants discloses the following facts: Mrs. Rose was a resident of Dunlap, in Peoria county, a village of about five hundred population. She was a member of Prospect Presbyterian church, and had been since 1859. Her husband was also a member of that church at the time of his death. She was a liberal contributor to the church and deeply interested in all its charitable works. Her chief interest appears to have been in the missionary work of the church, and she gave liberally to both home and foreign missions. In 1872 the women of Prospect church organized a home and foreign missionary society and Mrs. Rose was one of the charter members. Meetings of this society were held every month

and there was also an annual praise meeting. Mrs. Rose attended these meetings and gave freely to the mission cause. In 1893 she was vice-president of the society and conducted many of the meetings in her own home. When collections were taken in church for the missionary work she always contributed when present, and if absent would send her contribution later. She attended the meeting of the general assembly of the Presbyterian church at Los Angeles, California, in 1903, and at Lake Winona, Indiana, in 1897. She attended as a delegate from her society a number of annual meetings of the Northwestern Branch of Home and Foreign Missions, composed of societies of the Presbyterian church of the northwest. It was also proved by the heirs that she attended meetings of the Ladies' Aid Society of the Methodist church, contributed to its support, and made donations for the repair of the Methodist church and for the payment of the pastor's salary. When away from home she frequently attended churches of other denominations than the Presbyterian. She was a loyal Presbyterian, but in her charitable work she did not confine her benevolences entirely to her own denomination. She gave freely whenever and wherever she felt it was needed. The village in which she resided was small, and her donations to her church and its enterprises were considered large in that community. She often talked of the disposition of her property, and always stated she was going to leave it for missionary work and for the education of poor children. In these conversations she did not use the names of the boards which carried on the work, but used only the terms "home missions" and "foreign missions," which were the names generally used by the church to designate the two boards carrying on the work.

The terms "home missions" and "foreign missions" have a well accepted meaning in church parlance. They are not always used in the same sense, but wherever used are associated with the notion of a benevolent service for others.

(*Domestic and Foreign Missionary Society's Appeal, supra; Bulkley* v. *Worthington,* 78 Conn. 526.)    Many, if not all, christian churches have departments of work known as "home and foreign missions."    They are usually separate and distinct branches of work, and are carried on by boards organized, and sometimes incorporated, for that purpose alone.    Each church may have a different scheme or plan for carrying out its charities, but to all the terms "home missions" and "foreign missions" have substantially the same meaning.    Churches and schools are built, hospitals established and relief depots maintained, through which are taught the principles of christianity, the afflicted are cared for and the needy supplied with food and clothing.    This line of work is so well organized that foreign lands, as well as our own country, are divided, to a great extent, among the different christian denominations for more effective missionary work.    Millions of dollars are spent in this cause every year, and thousands of people are devoting their entire time to civilizing, christianizing and educating the less fortunate inhabitants of this and foreign countries.    All of this is comprised within the terms "home missions" and "foreign missions."    The testatrix was familiar with the work and methods of the Presbyterian church, of which she was a member, in carrying on its charities, especially that of its missions.    She belonged to societies organized for missionary purposes.    She was an officer in one such society and had been sent as a delegate to conventions held for the purpose of promoting such work.    She had inquired of ministers the details of the work and was informed as to the manner of collecting and distributing the missionary funds.    She was familiar with the respective boards of missions of her church to which the funds collected for that cause were turned over to be expended.    All contributions and gifts passed through the same channels before the ultimate objects of the charity were reached.    The entire charitable scheme of the church

was usually spoken of as "home missions and foreign missions," the agencies for carrying on the work being the board of home missions and the board of foreign missions. We think it clear that by the use of the words "home missions" and "foreign missions" the testatrix had in mind and intended the bequest for the respective boards incorporated for that purpose. She used the general term,—the one commonly adopted,—instead of the more specific term used to designate the agency directing the work. The question is merely one of identification, and parol evidence was admissible for that purpose.

In *Gilmer* v. *Stone, supra,* the testator, after making certain bequests to the Presbyterian church of Irish Grove, Illinois, of which church he was a member, directed that the remainder "be equally divided between the board of foreign and the board of home missions." It was there contended that other churches had boards of home and foreign missions, and that the will was void for uncertainty as to the donee and the purposes of the gift. The court held that parol evidence was admissible for the purpose of placing the court, as far as possible, in the situation in which the testator stood, and thus bring the words employed by him in contact with the circumstances attending the execution of the will, and thereby aid in identifying the institution described by the testator as "the board of foreign and board of home missions."

The gifts by Mrs. Rose were valid gifts to the respective boards of home and foreign missions of the Presbyterian church. The object of the charity was certain and definite. No trustee was required to be designated by the testatrix nor directions given for the management or expenditure of the fund. The management of it was committed to the corporate bodies organized for that purpose in carrying on the missionary work of the church in accordance with plans adopted by the boards.

The bequest for the education of poor children is a gift for charitable uses and purposes, with the subject and object of the trust designated but no trustee appointed to carry out the trust and no provision made by the will for the appointment of one. Appellants contend that as the gift is not limited in locality, no trustee named with power to select the beneficiaries, no scheme presented by the will for administering the trust and no power expressly given for the appointment of a trustee, it is invalid. Counsel have in their brief presented an able and interesting discussion of the subject of gifts to charity generally, without naming the object of the charity or designating a trustee with power to select, and the origin of the application in England of the doctrine of *cy pres* in such cases, but as in our view of this case that doctrine is not applicable, and in view of the further fact that the subject has so fully received the consideration of this court in previous decisions that we could add nothing enlightening upon the question, we will not enter upon a general discussion of that subject. It is sufficient to say that to sustain this gift does not require the exercise of any prerogative power of a nature sometimes exercised in England, but requires only the exercise of the ordinary jurisdiction of a court of equity. The bequest for the education of poor children is a gift for charitable uses within the letter and spirit of 43 Elizabeth, (chap. 4,) known as the Statute of Charitable Uses, and which has been adopted in this State. In States where that statute is in force, a gift to charity, the object being definite, will not be allowed to fail for want of a trustee named to execute the trust. It would be unwarranted to assume that because no trustee was appointed and no scheme provided by the will for the administration of the trust, the testatrix intended the gift to fail. Her intention was, we are bound to assume, that the fund be used for the education of poor children. It was impressed by her with that trust, and it is a familiar rule that equity will not allow a trust to fail

for want of a trustee, but will itself administer the trust or appoint a trustee to administer it. Cases have arisen where a trustee has been appointed to administer a charitable trust but where no scheme for carrying it out was provided by the will, and cases where a scheme for administering the trust has been provided by will but no trustee designated to execute it, and courts of equity have supplied the trustee in the one case and the mode or scheme in the other.

In *Heuser* v. *Harris,* 42 Ill. 425, the court considered a devise for "the support of the poor of Madison county." No trustee was appointed to administer the trust and no directions given for the selection of the particular beneficiaries. The court directed that the trust be administered by the county court for the benefit of the paupers of the county. In that case the *cy pres* rule and the statute of Elizabeth were fully discussed, the court holding that the object of the bequest cannot be changed by resort to the *cy pres* rule, but that it may be applied to the mode for the purpose of giving effect to the intention of the testator in the administration of the trust. The court said, in carrying into effect a bequest to an individual the mode in which it is to take effect is deemed essential, but where the legacy is to charity a court of chancery will consider charity as the substance, and, if the mode designated fail, will provide another mode by which the charity may take effect. Courts will not, however, under the *cy pres* rule, apply the charity to a different object.

In *Hunt* v. *Fowler,* 121 Ill. 269, there was a bequest of the income from the residue of the testatrix's estate, "to be distributed annually among the worthy poor of the city of LaSalle, in such manner as a court of chancery may direct." It was contended the gift was void because of the uncertainty of the beneficiaries intended by the will. The case is an instructive one, though the will differed from the one in the case at bar in that the object of the trust was limited to the territory of a city and its administration was left to the

direction of a court of chancery. The trust was sustained, the court holding that the class was definite but the individuals of the class to whom the bounty was to be distributed were uncertain; that an essential feature of a public or charitable trust is that the beneficiaries are uncertain, but that is immaterial if discretionary power is vested in some one over its application to those objects. Here, if a trustee had been appointed by Mrs. Rose without any express directions as to the selection of the beneficiaries, authority to select them would be implied from the nature of the trust.

In *Grand Prairie Seminary* v. *Morgan,* 171 Ill. 444, the court considered a gift to be held in trust by the trustees named in the will to settle the estate, and their successors in trust, to accumulate until it amounted to a certain sum, then not exceeding $5000 of it to be used in erecting a building for the purpose of educating boys who reside in the State of Illinois, between the ages of twelve and eighteen years and who were unable to educate themselves, the balance of the fund to be kept at interest and the income used for the purpose of paying teachers employed in the school. No provision was made for the appointment of successors in trust and nothing was said in the will as to who should determine, or how it should be determined, just what boys in Illinois between the ages mentioned, and unable to educate themselves, should be selected as beneficiaries of the trust. It was claimed the bequest was void for uncertainty, but this court held the bequest was charitable, the object of it being certain. Upon the point made that the bequest was invalid because the will did not provide for trustees to control the fund after the estate was settled and did not authorize the appointment by a court of chancery, this court said: "Moreover, the bequest being charitable and valid, a court of chancery will provide or appoint trustees to take charge of the fund, and will not allow it to fail because the donor did not designate a trustee."

In *Grant* v. *Saunders,* 121 Iowa, 80, (100 Am. St. Rep. 310,) the court considered a bequest for the benefit of the poor, to be given to such objects as the trustee named should deem worthy. The court held the fact that the beneficiaries of the trust were unlimited as to locality was no objection to the validity of the bequest. Another objection made was, that the trust must fail because the appointment of trustees to succeed the one named in the will was not provided for in the will. Upon this point the court said: "To Miss Fouche is given the right to first execute the charitable purpose, and, although the testator does not expressly provide for the appointment of others by whom the objects shall be selected and the fund distributed when she shall decease or for any other reason be incapable of acting, it cannot be that he intended his gift to fail. He created it for a specific charitable purpose, and he might well suppose, if his attention were called to the matter, that proper means of executing his purpose could be provided through the medium of the courts if in any matter of detail his provision therefor was insufficient."

In a note to *Hoeffer* v. *Clogan,* 171 Ill. 462, as it appears on page 263 of volume 63 of the American State Reports, will be found collected a list of cases holding that a gift for the benefit of the poor in general is a valid charity.

Other instructive cases might be mentioned, but in the cases cited in this opinion will be found references to text writers and adjudicated cases covering every phase of the subject involved in this litigation, and we conclude from the authorities that the bequest for the education of poor children is a valid charitable trust, and although no trustee was appointed with power to select the particular beneficiaries from the class named, the trust will not for that reason fail, but it will be administered by the court through a trustee appointed by a court of chancery.

The decree of the circuit court directed that a trustee be appointed to receive the bequest for the education of poor

children, the same to be devoted to the charitable use designated, under the supervision of the circuit court. The Appellate Court held that it was the intention of the testatrix that the fund for the education of poor children should go to the Troy Orphan Asylum of Troy, New York, and directed that the trustee appointed invest the fund and pay the net income arising therefrom to the board of trustees of said institution, to be used for the education of the children under its care. While it is insisted by the Troy Orphan Asylum that it is entitled to receive the bequest for the education of poor children and that the residuary estate should be so divided that it will receive one-half instead of one-third, as held by the Appellate Court, we do not think the proof in this case warrants us in sustaining that contention. The evidence relied upon to show that the testatrix had in mind and intended the gift for the Troy Orphan Asylum is, in substance, as follows: The Troy Orphan Asylum is a New York corporation organized for the charitable purpose of educating and caring for poor children and has been in continuous operation since 1835. Its property is valued at $275,000, and consists of a farm, hospital, infirmary and other buildings. A large number of instructors and overseers are employed, and the institution cares for about three hundred children between the ages of two and ten years, and many children above the age of ten years have been placed in homes but still remain under the control of the institution. The expenses of the institution are paid from voluntary subscriptions, endowments and bequests, together with the interest on a permanent fund of $200,000. Mrs. Rose was a native of New York and her husband was raised within a half mile of the orphan asylum. The ancestors of both were among the founders of the institution and other relatives of theirs contributed to its maintenance. One of her relatives was vice-president, and a Miss McChesney, a second cousin, was treasurer and manager of the asylum for many years and was still acting in that

capacity when she testified in this case. Mrs. Rose visited Miss McChesney several times and became very much interested in the work of the institution in caring for and educating the children. Her visits were made in 1888, 1891, and again in 1901, each one extending over a considerable period of time. She at one time contributed to the founding of two beds,—one in memory of her husband and one of herself. She also planned for the erection of a building for the smaller children in memory of her husband, and at her request plans were drawn for the building, paid for by the trustees, but were never used. She said she wanted to put up the building or would leave money for its erection, and also stated she wanted to call it the Rose Memorial. Several witnesses testified that testatrix frequently spoke of the children in the home and called them her children. Except the contribution for the two beds she did not give any financial aid to the institution. She visited the children at the home almost daily while visiting Miss McChesney and saw them at work and play. While deeply interested in the work of that institution, she did not, in her will or otherwise, direct that it should be the recipient of that portion of her estate devoted to the education of poor children. It seems strange, knowing as much as she did about the Troy Orphan Asylum, that if she intended it to be the recipient of her bounty she should not have so indicated in her will. She also is shown by the evidence to have taken an interest in certain charitable work for the benefit of children in Peoria conducted by the Women's Christian Home Mission. That society maintained a home for poor children, called the Home of the Friendless, which was supported by donations. For lack of means its only facilities for educating the children in the home were the public schools. Mrs. Rose made some contributions to that object, but as she designated no particular persons as beneficiaries nor any society or organization to control and direct the gift, it would seem more reasonable that she had no particular benefici-

aries in mind; that she only had in mind and designated the class, leaving the selection of the particular beneficiaries from the class to the trustee appointed and directed by a court of chancery. While we will not assume to designate any particular poor children who shall receive the benefits of the fund, we are of opinion that the fund should be limited to use for the benefit of the poor children of Peoria county. We agree with the Appellate Court that the residuary estate should be divided into three equal parts, the Board of Home Missions and the Board of Foreign Missions of the Presbyterian Church of the United States of America each to receive one part, and the trustee to be appointed by the court to administer the trust for the education of poor children to receive one part. It seems clear from the will that this was the intention of the testatrix.

The circuit court allowed, and ordered paid out of the estate, solicitors' fees for the solicitor for the executor, also for the solicitors for the adult heirs and the guardian *ad litem* for the minor heirs, but refused to make any allowance for the solicitor for the Troy Orphan Asylum. The Appellate Court affirmed the allowances for fees made by the circuit court and directed the circuit court to make a reasonable allowance to the solicitor for the Troy Orphan Asylum. We are not disposed to disturb the decree of the circuit court allowing solicitors' fees in this case, but if the heirs are allowed a solicitor's fee we can see no good reason for not allowing a solicitor's fee to the Troy Orphan Asylum, and agree with the Appellate Court that the chancellor should fix and allow a reasonable fee for that purpose.

For the error of the Appellate Court in directing the income from the bequest for the education of poor children to be paid to the Troy Orphan Asylum its judgment is reversed. In all other respects it is affirmed. The case will be remanded to the circuit court, with directions to that court to enter another decree and therein divide the residue

of the estate into three equal parts, and give one part to the Board of Home Missions of the Presbyterian Church, one part to the Board of Foreign Missions of the Presbyterian Church, and to appoint, under adequate bond, a trustee to receive, invest and expend, under direction of the court, the other part for the education of poor children in Peoria county, and also to allow the Troy Orphan Asylum a reasonable solicitor's fee.

*Reversed in part and remanded, with directions.*