R. P. HORNE v. NASHVILLE TRUST COMPANY, Executor.

Middle Section. January 20, 1930.

Petition for Certiorari denied by Supreme Court, April 5, 1930.

Pilcher & Pilcher, of Nashville, for appellant.

Hume, Newman & Armistead and Levine & Levine, all of Nashville, for appellee.

DeWITT, J. R. P. Horne, as sole next of kin of his sister, Miss Leona N. Horne attacked as void a bequest to ''Wesley House'' in the ninth item of her will. The entire ninth item is as follows:

''At the time of the death of my dear mother, I direct that my entire estate be divided equally between the herein named worthy Nashville institutions:

''Wesley House,

''Old Woman's Home,

''Little Sisters of the Poor,

''United Charities,

and I request that the recipients under this item of my will, if they deem it proper, to commemorate my donation by some form of tablet or other marking, as an inspiration for others who depart after me to be inspired to remember these most worthy institutions. I do not make this obligatory upon these organizations, but I simply express my views and wishes.''

After the bill was filed by Mr. Horne he died and the cause was revived in favor of his wife, who is his executrix.

The grounds of attack are that Wesley House is an unincorporated association incapable of taking the gift, and that the trust is so uncertain with respect to its objects that a court of equity cannot appoint a trustee and the trust must fail; nor can the trust be saved by chapter 137 of the Acts of 1917.

The litigation arose over the fact that Wesley House is an institution owned and operated by an eleemosynary corporation styled ''Woman's Board of City Missions, Nashville, Tennessee, M. E. Church, South.'' This corporation was made a party under an answer and cross-bill filed by the executor. It alleged that it was generally known as ''Wesley House;'' and that out of her interest, as a member of McKendree Methodist Church, in the work of the said Woman's Board of City Missions, the testatrix bequeathed to it, under the name, ''Wesley House,'' a considerable portion of her estate.

Upon a careful review of the record, we concur fully in the following findings of facts made by the Chancellor:

''The Court finds the facts to be that the complainant R. P. Horne is the sole surviving heir at law of his sister, Leona N.

Horne, and that there is no corporation under the name and style of 'Wesley House.'

"The Court further finds that for some years previous to 1912, a number of ladies belonging to various Methodist Churches in Nashville had been engaged in charitable activities in a certain section of South Nashville, and had conducted a settlement home under the name of 'Wesley House' in buildings rented by them, and that in November, 1912, these ladies purchased three lots fronting together 105 feet on the east side of Wharf avenue, and thereafter erected a building thereon, called 'Wesley House,' that their activities in this charitable work were conducted exclusively under the name of 'Wesley House' and that the cornerstone of the building was inscribed "Wesley House;' that funds for the conduct of these activities were furnished by about 26 Methodist congregations in and near Nashville and that the members of the various Methodist churches knew and referred to this particular charitable enterprise as the 'Wesley House.'

"In June, 1912, shortly before the purchase of these lots and the erection of the building thereon, these ladies caused a charter for general welfare to be issued to them under the name of 'Woman's Board of City Missions, Nashville, Tennessee, M. E. Church, South.' This charter is properly recorded in Book 399, at page 41 in the Register's Office of Davidson county. the particular purposes for which the charter was granted are set out therein as follows:

" 'The upbuilding of religious life through such channels as preaching sermons, children's Sunday Schools, Bible study classes, cottage prayer and noonday factory services, lectures, library and reading rooms, hygenic, esthetic, economic and industrial instructions for the improvement of religious character and for furnishing a proper environment for the growth of such religious life and character.'

"The title to the property purchased as above mentioned was vested in this corporation.

"Since the purchase of the lots and the erection of the Wesley House building thereon, the activities of the corporation, 'Woman's Board of City Missions, Nashville, Tennessee, M. E. Church, South,' have been conducted in and from this building and under the name 'Wesley House.'

"The testatrix, Miss Horne, knew of this building, the activities of these ladies under the name of 'Wesley House,' and did not know of the corporation 'Woman's Board of City Missions, Nashville, Tennessee, M. E. Church, South.' The financial reports of the corporation were made under the name of 'Woman's Board of City Missions—Wesley House.'

"The facts further are, that all of the activities of the corporation were and are conducted under the name 'Wesley House.' 'Wesley House' not only engaged in charitable work in and from the building on Wharf avenue, but it had a 'Wesley House Annex,' a 'Wesley House Kindergarten,' a 'Lucy Holt Moore Kindergarten,' and it engaged in various charitable activities, all under the name of 'Wesley House.' The only place the corporate name appears was in the charter and deed."

The Chancellor dismissed the bill, holding "that under the facts as shown by this record and under the law, the bequest of Miss Horne to 'Wesley House' means a bequest to the 'Woman's Board of City Missions, Nashville, Tennessee, M. E. Church, South,' the corporate entity that conducted its charitable enterprises under the name of 'Wesley House' for the use and benefit of 'Wesley House.'" The decision was based upon the general rule that where the name or description of a legatee is erroneous, but there is no reasonable doubt as to the person who was intended to be named or described, the mistake will not defeat the bequest this rule applying as well to a corporation as to an individual.

This principle has been applied in a number of cases in Tennessee.

In Moseley v. Goodman, 138 Tenn. 1, 195 S. W., 590, a testator devised property to "Mrs. Moseley" and it was held that Mrs. Lillian Trimble was the person intended by the name "Mrs. Moseley." It was sufficient to show the testator's meaning that he always called her Mrs. Moseley, although he knew that she was Mrs. Trimble. The rule was adopted that a devise to a person by any name, however different the name used in the will from the true name of the person, is good, provided it is shown that the name used was one by which the testator was accustomed to designate the person. The Court quoted, with apparent approval, the doctrine that a devise to a person or society by the name by which he or it is known to the testator, is a good devise to such person, although known to others by a different name. Tilton v. American Bible Society, 60 N. H., 377, 49 Am. Reps., 321. The decision in Wood v. Hammond, 16 R. I., 98, 17 Atl., 324, was cited, that a bequest to "the nursery," where there is no existing society bearing that name, by extrinsic proof was shown to be intended for a society named "St. Mary's Orphanage," which had taken over the operation of a society called "Providence Nursery." and generally referred to by the testator as "the nursery" to which he had made contributions during his lifetime.

In Milligan v. Greeneville College, 156 Tenn., 495, 2 S. W. (2nd), 90, a gift to the "A. F. & A. M. Masonic Widows' and Orphans' Home at Nashville, Tennessee" was held to be equivalent to a gift to the Ancient, Free and Accepted Masons for the benefit of the Masonic Widows' and Orphans' Home at Nashville, Tennessee, for

the conduct of the Masonic Widows' and Orphans' Home at Nashville, Tennessee, was but a department or branch of the charitable or benevolent work of the Grand Lodge of that order—a department of a legally organized charitable organization capable of taking and holding property. The Supreme Court held that the misnomer of the corporation did not invalidate the gift, since the proof made the intention of the will quite clear. The case was aligned with Bank v. Burke, 1 Cold., 623; Trustees of McMinn Academy v. Reneau, 2 Swan, 94, State v. Smith, 16 Lea, 662, and Carson v. Carson, 115 Tenn., 37, 88 S. W. 175.

In Breeding v. Williams, 9 Tenn. App., 335 (writ of certiorari being denied by the Supreme Court), there was involved a devise to the Claiborne County High School. The contentions were made that it was an unincorporated institution, incapable of taking; that no trustee was interposed; and that the trust was too indefinite to be valid—the same contentions as are made in the instant case. It was held that Claiborne County High School was merely a misnomer, and that the testator intended as his beneficiary the Claiborne County Board of Education, a quasi corporation capable of taking, holding and administering the trust. By analogy to the Milligan case, the gift was thus upheld as to a branch (Claiborne County High School) or department of the corporation (Claiborne County Board of Education) having control of the high school system of the county. In the opinion of the Court of Appeals it is also said:

"The gift is to this named school, as the gift in the Milligan case was to a named home, and in the Milligan case the court held that since this home was a department of the Grand Lodge, the bequest went to the Grand Lodge, so in this case, since the high school in question is a department of the school system of Claiborne County, which system is under the control of the Board of Education, then the bequest is to the Board of Education. But since it was the intention of the testator that the bounty should be expended on the particular high school situated between Tazewell and New Tazewell, then the Board takes the bequest with the duty to expend it in the betterment of this school, to the exclusion of all other high schools in the County."

If the bequest to Wesley House is to be treated as a bequest to the corporation, the question of validity is eliminated; for the corporate purposes are charitable and a gift to such a corporation is for the purposes declared in the charter, due deference being paid to the diections of the testator, if any are given. Johnson v. Johnson, 92 Tenn. 559, 23 S. W., 114; Carson v. Carson, supra, and Milligan v. Greeneville College, supra.

Furthermore, the fact that the corporate purposes and activities are wider than the maintenance of Wesley House would not affect

the gift, for the corporation can take and administer the fund for the maintenance of Wesley House alone, as a branch of its activities, just as the Grand Lodge of Masons might take and hold for the benefit of the Widows' and Orphans' Home, or the Claiborne County Board of Education for the benefit of the Claiborne County High School.

We now deal with the pivotal question—is "Wesley House" to be treated as a mere misnomer for the corporation?

The contention is made that there is no ambiguity in the will, justifying any consideration of extrinsic evidence; that the bequest is to "Wesley House," a voluntary unincorporated association incapable of taking; and that there has been no attempt to appoint a trustee under the provisions of the Act of 1917.

We are not dealing with a bequest to an association having no corporate entity and no trustee being named. The term, "Wesley House," calls for inquiry as to what and where it is. The very proof has made a case of latent ambiguity which arises when the will contains a misdescription of the object or subject. Patch v. White, 117 U. S., 217, 29 L. Ed., 864. In that case it was observed that "as a latent ambiguity is only disclosed by extrinsic evidence, it may be removed by extrinsic evidence." The purpose of the evidence is to place the court, as far as possible, in the situation in which the testatrix stood, and thus bring the words employed by her into contact with the circumstances attending the execution of the will. Such proof does not contradict the terms of that instrument, nor tend to wrest the words of the testatrix from their natural operation. It serves only to identify "Wesley House" as the corporation owning and managing it; and thus the court is enabled to avail itself of the light which the circumstances in which the testatrix was placed at the time she made her will would throw upon her intention. Gilmer v. Stone, 120 U. S., 586, 30 L. Ed., 734.

In ascertaining the beneficiary intended, the popular use of a word used in designating a legatee or devisee is to be considered. Grant v. Grant, L. R., 2 Prob. & Div., 8 L. R. 5 C. P., 380. Evidence that a society is frequently referred to by a name used in a bequest is admissible to identify it as the society mentioned. Re Smith, 8 D. L. R., 93. And it may be shown by extrinsic proof that a society claiming a bequest is popularly known and designated by the name used in the bequest to designate the legatee. Cresson's Appeal, 30 Pa., 437.

The Tennessee decisions hereinbefore reviewed show unmistakably the application of these principles to analogous facts. They sustain the rule that if the beneficiary is misnamed, the gift will not fail when the true name is shown. The property then passes to the donee in its true name. It is not, therefore, a matter of changing

the will but merely supplying the true name so as to effectuate the manifest intention of the testator. It is in no sense a substitution of another beneficiary.

We see no sound reason for burdening the estate with the costs of this litigation. The decree of the Chancery Court is affirmed. The costs of the appeal are adjudged against the appellant and the surety on the appeal bond.

Faw, P. J., and Crownover, J., concur.