PAN AMERICAN PETROLEUM CORPORATION *et al. v.* BARDWELL *et ux.*

(In Banc. January 12, 1948.)

[33 So. (2d) 451. No. 36569.]

Roach & Jones, of McComb, for appellants.

**F. D. Hewitt,** of McComb, for appellees.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

Pan American Petroleum Corporation, hereinafter called Pan American for the sake of convenience, a wholesale distributor of gasoline, kerosene, motor oil, grease, and other products, and Peter J. Batrous, its distributor in Pike County, and two adjoining Mississippi counties, and sub-lessee of the service station, which is the basis of this litigation, sued Edward H. Bardwell and his wife, Tera Mae Bardwell, in the Chancery Court of Pike County. The prayer of the original bill sought a decree requiring the Bardwell defendants to ''recognize that the lease executed by them to Pan American on the 2nd day of August, 1944, is now in full force and effect and requiring them to specifically perform each and all of . the provisions thereof, and to grant them writs of assistance to put them into a peaceful possession'' of the service station.

Pan American's sub-lessee, and distributor, Peter J. Batrous, sought recovery against Edward H. Bardwell, of certain damages not here necessary to state in detail. It may be well to point out, however, that such damages are claimed as of a period of time not affected or affectible by the specific performance sought by Pan American.

Defendants (appellees here) filed a demurrer, answer and cross-bill. The demurrer was overruled, and upon answer of appellants to the cross-bill, the cause proceeded to trial on the pleadings and the evidence. By their cross-bill, appellees sought damages from Pan American and Peter J. Batrous for loss of certain profits,

alleging breach of contract. In a second of their cross-bill, appellees averred that they were entitled to damages because of an alleged interference with their claimed right to purchase gasoline and other petroleum products from Gulf Refining Company, and a purported arrangement with one Wilkins, following the alleged breach of contract.

At the conclusion of the trial, the chancellor dismissed both the original and cross-bills, decreeing that ''the complainants are not entitled to the relief prayed for in their bill of complaint and supplement thereto, and also is of the opinion and finds that the defendants and cross-complainants are not entitled to the relief prayed for in their cross-bill.'' Pan American and Peter J. Batrous have appealed here. There is no cross-appeal by the Bardwells. Appellants have assigned and argued here the following alleged errors: ''1. The court erred in not granting the appellants the relief prayed for in their bill of complaint. 2. The court erred in not holding that the lease executed by the appellees on August 2, 1944, to the appellant, Pan American Petroleum Corporation, is valid and binding, and in not requiring the appellees to specifically perform said lease and in not putting the appellants into the peaceful possession of the premises covered by said lease by writs of assitance. 3. The court erred in not permitting the appellant, Peter J. Batrous, to recover the loss of profits that he has sustained. 4. The court erred in not permitting the appellant, Peter J. Batrous, to recover a reasonable rental from the appellees for the use and occupancy of the premises covered by said lease from and after July 31, 1945.'' There are other assignments not pressed or argued, and we do not deal with them.

The lease to Pan American executed by E. H. Bardwell, as owner of the service station involved, on August 2, 1944, is of paramount importance in the decision of this case. After describing the lot and the property the lease provides in Section 1 ''To have and to hold unto the

lessee for the term of one year, commencing on the 1st day of August 1944 and ending on the 31st day of July 1945." By Section 6 of the rental contract the option to renew it for each of five successive years was granted Pan American in the following words: "Lessee shall have the option of extending this lease as hereinafter provided, upon the same terms and conditions which were in effect during the original term . . . Lessee shall give Lessor written notice of its intention to exercise its extension privilege at least thirty (30) days prior to the expiration of the original term hereof . . . Provision then followed for a similar option and procedure in each of the other years of the five year period.

By Section 12 of the lease, it was stipulated: "It is further understood and agreed that all notices given under this lease shall be deemed to be properly given if delivered in writing personally, or sent by registered mail to the Lessor at the address herein shown, or to the Lessee at its main office in New Orleans, Louisiana. Date of giving of such notice by mail shall be the date on which such notice is deposited in a post office of the United States Post Office Department." There was nothing in this agreement whereby Pan American agreed to appoint the lessor, Edward H. Bardwell, its distributor in Pike County and two adjoining counties, which we think is a potent circumstance in the case. It was a lease contract, dealing with the real estate and service station thereon. It was signed by both of the Bardwell's appellees, and on behalf of Pan American by A. E. Ralston, Vice President.

On April 25, 1945, strictly in accordance with the procedure required by the lease contract, Pan American gave notice of its exercise of the option to renew it for another year, among other things, writing: "And, accordingly, this is to notify you that we hereby extend the said lease dated August 2, 1944, for a period of one year commencing on August 1, 1945, and ending on July 31, 1946, upon the same terms and conditions as in said

lease provided." Likewise, Pan American contends it has complied with its part of the lease, except where prevented by appellees, and that appellee E. H. Bardwell has breached it by withholding possession thereof from it, and its sub-lessee, Peter J. Batrous, who also makes the same contention.

G. R. Bardwell, a brother of E. H. Bardwell, had been the owner of the filling station, and for a number of years prior thereto had been leasing it to Pan American, who subleased it in turn to him, and Edward H. Bardwell operated the station on behalf of his said brother, who was also distributor for Pan American, and, of course, all gasoline, kerosene and petroleum products were to be bought from Pan American. On August 1, 1944, C. R. Bardwell sold the filling station to his brother, E. H. Bardwell, appellee, who executed the lease here concerned on the following day, August 2, 1944, to expire July 31, 1945, as stated. The notice therefore given, supra, on April 25, 1945, would ordinarily have carried the matter forward, without controversy, and the refusal of appellee Edward H. Bardwell to permit this to be done raises the real issue in the case.

In response to Pan American's letter, supra, appellee, Edward H. Bardwell, who was still operating the station and dealing in Pan American Products, wrote the Mississippi State Manager of Pan American as follows: "On July 31, 1945, your lease on Service Station No. 1201, McComb, Mississippi, expires, and I'm not interested in the so-called one year options. I am unhappy and dissatisfied and I am sure you don't want a dealer that's not satisfied. Mr. Cannon I expect to change products August 1st and you will be advised later as to whom you should invoice with your equipment. I am asking you to release me outright as of July 31, 1945. I will appreciate an early reply as to your instructions." It is to be noted that this letter, in effect, recognizes the validity of his lease to Pan American, and asks for release therefrom as of July 31, 1945, the date of its expiration, unless renewed under

the aforesaid option. This is important, because in his pleadings and his proof Edward H. Bardwell contended and undertook to prove, and did convince the chancellor that the lease was invalid because fradulently obtained from him, in view of his claim that a general agent of Pan American, with authority, appointed him distributor, on condition that he execute the lease. His requested release was refused.

The unhappiness and dissatisfaction expressed by appellee, Edward H. Bardwell, in his letter, supra, manifestly grew out of his failure to secure the appointment as Pan American's distributor, when that agency ceased to be performed by his brother, C. R. Bardwell. Appellee contended further that he was actually appointed distributor by Pan American on August 30, 1944, on which date he purchased from C. R. Bardwell his stock of petroleum products on hand in the station. He also claimed that he actually served as such distributor for seven days, and that Bowen, as general agent for Pan American, made the arrangement and the appointment. Later, when Peter J. Batrous was appointed distributor, and Pan American refused the appointment to E. H. Bardwell, the payment was returned to him by C. R. Bardwell.

Appellee, E. H. Bardwell, argues also this purchase of the stock of petroleum, and other property in the station, from his brother, is a circumstance cooroborative of his alleged appointment by Bowen to the position of distributor for Pan American. We do not think so. This distributor delivered orders on a wholesale basis in three counties for retail resale by customers of the wholesale dealer. So such purchase from C. R. Bardwell has more evidentiary value in support of E. H. Bardwell's purpose to continue to operate the station for Peter J. Batrous as formerly for his brother than it does to furnish the predicate for his obtaining the distributorship, since the products bought had already been distributed to the station where they were then in

stock for retail sale in the station, as stated, being then operated by E. H. Bardwell, as he had before been operating it, for his brother, C. R. Bardwell, at the time subtenant and distributor of Pan American.

Appellees insisted and offered evidence at the trial that the lease dated August 2, 1944, was to be withheld from recordation and not to be effective unless he was appointed distributor. Bowen took the lease aforesaid, sent it to the State Agent in Mississippi for Pan American, who approved it, and it was sent to headquarters in New Orleans, Louisiana, where it was executed by A. E. Ralston, Vice President. There is no proof in the record that either of these officials knew anything whatever of any conditions being attached to the delivery of the lease. But, say the appellees, having succeeded in appointing Peter J. Batrous as distributor on September 6, 1944, and having subleased the station to Batrous, in violation of the arrangement and in pursuance of a fradulent purpose, Bowen did record the lease. Appelles further urge that all contracts between them and appellant Pan American were cancelled by agreement with Bowen.

All of this is denied by appellants, who offered evidence in proof of their denial, but the chancellor accepted by his decree, ante, the version of appellees. This we think was manifest error.

Without contradiction, the record reflects that the appointment of distributors by Pan American followed prescribed rules. The applicant applies in writing to the State Agent at Jackson, Mississippi, who, after investigation, and if he approves the application, forwards it to the New Orleans office for final consideration, and if everything is satisfactory, the appointment is made by Pan American through a Vice President. This procedure was followed in the case of Peter J. Batrous. There was no pretense that it was done by or with Edward H. Bardwell. The only direct and informed evidence of value demonstrates that Bowen had no authority to appoint

distributors, and that he was merely a salesman of Pan American, with, of course, some natural interest to keep in touch with customers, actual or prospective, of Pan American, in the promotion of trade, and that his participation in the events can reasonably be relegated to the furtherance of the purposes of his salesmanship of the products of his employer, but not to any usurpation of the functions and authority of the State Manager in Jackson, and the Vice President in New Orleans. Certainly, as such salesman here he had, as stated, no authority to appoint or agree with appellee Edward H. Bardwell, as claimed by appellees.

That being so, it becomes immaterial whether he attempted to make the appointment of Edward H. Bardwell as distributor, or accepted the lease on condition it would be or become ineffective if the appointment were not made, and agreeing to withhold the Bardwell lease from record until this were determined, or that E. H. Bardwell attempted for a few days to act as distributor, unless these things were known to Pan American through somone in authority. There is no such proof here of such knowledge. Fairbanks Morse & Co. et al. v. Dale & Co., 172 Miss. 271, 159 So. 859; American Bankers' Insurance Company v. Lee, 161 Miss. 85, 134 So. 836. In passing, we point out an inconsistency of appellees' position here, and that is, if Bowen had authority to make the appointment and the agreement, there could be no reason to withhold the lease from record pending its consumation by approval of Pan American.

The burden of proof to establish agency and the agent's authority is upon the person asserting it. In this case, that burden rested upon appellees, and they did not sustain it. Howze v. Whitehead, 93 Miss. 578, 46 So. 401; Planters' Lumber Company v. Sibley, 130 Miss. 26, 93 So. 440; J. B. Colt Company v. Black, 144 Miss. 515, 110 So. 442; New Home Sewing Machine Company v. Moody, 189 Miss. 628, 198 So. 550. Furthermore, the authority of Bowen to do what appellees contended he

did, was brought into the case as affirmative matter justifying their course, by appellees, and the burden was on them to prove it accordingly. We think that the proof in the record supports the position of appellants that Bowen did not have the requisite authority to bind appellant, Pan American, as appellees contend. Appellant Pan American, in our judgment, therefore, should have been granted a decree for specific performance and writs of assistance, and we do so here, thereby also reversing the decree of the chancery court on that issue.

With reference to the claim of Peter J. Batrous for damages, we are of the opinion that the chancery court was also in error in refusing the same to him, but since he may desire to amend and seek any additional damages for any further proper period of time to which he would be entitled, we do not enter decree here on the issue of damages. As sufficient facts are not presently before us on which to base a final decree as to all damages to Peter J. Batrous, we reverse the chancellor and remand the cause for further adjudication as to the amount thereof, which Peter J. Batrous may ultimately be entitled to recover.

Reversed, decree here in part, and remanded in part.