Fᴜ𝗊ᴜᴀ *v.* Mɪʟʟꜱ, et al.

June 14, 1954

No. 39171 67 Adv. S. 38 73 So. 2d 113

*Fred M. Belk,* Holly Springs; *Robert B. Smith,* Ripley, for appellant.

*Fant & Bush,* Holly Springs, for appellees.

441

441

**KYLE, J.**

This case is before us on appeal by Mrs. Alice E. Fuqua from a decree of the Chancery Court of Marshall County dismissing her petition contesting the validity of a codicil to the last will and testament of Mrs. Antionette Arnold in which the testatrix had devised and bequeathed the residue of her estate to the Methodist Church, Byhalia, Mississippi.

The record shows that Mrs. Antionette Arnold died on April 20, 1952, and that her last will and testament dated July 22, 1949, and a codicil thereto dated August 11, 1950, were duly admitted to probate in common form by two separate decrees of the chancery court rendered on May 29, 1952. Letters testamentary were duly granted to Mrs. Alice E. Fuqua as executrix of said will on the last mentioned date. In her will the testatrix disposed of her property as follows: In Item I of the will she directed that her just debts and funeral expenses be paid; in Item II of the will she confirmed a deed which she had executed to Mrs. Alice E. Fuqua on July 7, 1949, con-

veying to Mrs. Fuqua and her husband a house and lot in the Town of Byhalia, which was occupied by her at the time of her death. In Item III of the will the testatrix bequeathed to her daughter, Mrs. Gretchen Arnold Thompson, who at the time the will was executed was confined as an inmate in the Mississippi State Hospital at Whitfield, all of the personal property that she might own at the time of her death, after the payment of her debts and funeral expenses; and the testatrix appointed Mrs. Alice E. Fuqua as testamentary guardian of her said daughter. The testatrix in Item III of her will then devised and bequeathed to Mrs. Alice E. Fuqua all of her personal property remaining undisposed of at the death of her daughter. In Item IV of the will the testatrix named Mrs. Fuqua as executrix of the will and relieved her from executing bond as such.

The codicil, which was written in the testatrix' own handwriting and was dated August 11, 1950, is as follows:

"Aug. 11, 1950.

"Mrs. C. D. Arnold
"Byhalia, Mississippi

"I am correcting a mistake the lawyer, made in my will, I will, what money I have to my daughter Mrs. Gretchen Ann Thompson. The will, read, for it all be used for her, & they Mr. and Mrs. Fuqua to have the rest, if there was any left; I want all, used for her, & if any left, I want it, to go, to the Methodist Church, as I have never been financially able to give to the church, as I wanted to, & I want Aubry French to see that it is carried out as I want it.

"Mrs. Antionette Arnold
"Mrs. C. D. Arnold

"Witnesses
"Emilee Dee Lowry
"J. B. Going, Jr."

In her petition to contest the codicil the appellant alleged that Mrs. Arnold had entered into a verbal agree-

ment with the appellant and her husband, Fred T. Fuqua, on May 30, 1949, in which she had agreed to purchase and convey to petitioner and her husband the residence property in the Town of Byhalia, known as the "Clyde Neely place," reserving to herself a life interest in the property; and to execute a will whereby she would leave to petitioner all of her personal property remaining after the death of her daughter. The petitioner alleged that she and her husband had agreed to render certain valuable services to Mrs. Arnold in the consideration of her agreement to convey said homestead property to them and to bequeath to petitioner the residue of her personal property. The petitioner further alleged in her petition that Mrs. Arnold did on July 7, 1949, execute and deliver to her and her husband a deed of conveyance of the above mentioned residence property known as the "Clyde Neely place," reserving to herself, however, a life interest in the property; and that in pursuance of the above mentioned oral agreement, Mrs. Arnold and the petitioner and her husband, on July 22, 1949, executed a written contract covering the terms of the agreement relating specifically to the rights of the parties in the use and occupancy of the residence property during Mrs. Arnold's lifetime; and that Mrs. Arnold on the same date executed the above mentioned will.

The petitioner further alleged that the above mentioned deed, dated July 7, 1949, and the above mentioned contract dated July 22, 1949, and the above mentioned will, were all executed pursuant to the verbal agreement entered into by and between the parties on May 30, 1949; and that said instruments, including the will, were irrevocable. The petitioner also alleged that she and her husband had faithfully carried out their part of the agreement; and that the execution by Mrs. Arnold of the codicil dated August 11, 1950, wherein she attempted to change the terms of said will, represented an attempt to perpetrate a fraud in law and in fact upon the petitioner; that the attempted change in the will had been made in

violation of the terms of the agreement; and that the codicil was therefore void. It was also alleged in the petition that the codicil was so vague and indefinite in its terms that it was without legal effect on that account.

The trustees of the Methodist Church of Byhalia were made parties defendant to the petition; and the petitioner asked that proper process be issued for them, and that upon a hearing of the petition the above mentioned codicil be declared null and void and that the petitioner be recognized as sole legatee of the property owned by the testatrix at the time of her death. It was also alleged in the petition and the record shows that Mrs. Gretchen Ann Thompson, the daughter of the testatrix mentioned in the will and codicil, died sometime during the month of December 1951.

Copies of the above mentioned deed dated July 7, 1949, and the above mentioned contract dated July 22, 1949, and the above mentioned will were filed as exhibits to the petition.

The defendants in their answer to the petition admitted the execution of the above mentioned deed dated July 7, 1949, and the contract dated July 22, 1949. But the defendants expressly denied that Mrs. Arnold had promised to execute a will bequeathing all or any part of her property to the petitioner, or that the will dated July 22, 1949, was executed by Mrs. Arnold pursuant to any contract, or that the will was irrevocable. They denied that the testatrix in executing the codicil attempted to perpetrate a fraud upon the petitioner, or that the codicil was void for any reason.

Three witnesses testified on behalf of the appellant concerning the alleged oral agreement. Fred T. Fuqua, the appellant's husband, testified that he and his wife and their son and daughter were living in an apartment at the Harrison Hotel in Byhalia during the first half of the year 1949, and that Mrs. Arnold was also living at the hotel at that time; that Mrs. Arnold was 89 years

of age and had one daughter, Mrs. Gretchel Arnold Thompson, who was confined as an inmate in the Mississippi State Hospital at Whitfield; that Mrs. Arnold had several conversations with his wife and him concerning the purchase by Mrs. Arnold of a dwelling house and lot to be occupied by them as a home; and that on May 30, 1949, the matter was again discussed by the three of them in the Fuqua apartment at the hotel; and that Mrs. Arnold then agreed to purchase the "Clyde Neely place," in the Town of Byhalia, and convey the property to him and his wife, with the understanding that he and his wife were to take care of her and provide her with table board as long as she lived. Fuqua stated that Mrs. Arnold also agreed to make a will leaving her property to her daughter, and at her daughter's death the property to go to Mrs. Fuqua. Mrs. Arnold did thereafter purchase the "Clyde Neely property," and on July 7, 1949, executed a warranty deed conveying the same to Fuqua and his wife, jointly, reserving to herself, however, the use, control and occupancy of the premises for and during her lifetime; and on July 22, 1949, Mrs. Arnold and Mr. and Mrs. Fuqua executed a formal contract, whereby Mrs. Arnold rented the "Clyde Neely property" to Fuqua and his wife, reserving, however, her own room and such other part of the premises as she desired for her own personal use. The Fuquas agreed to furnish Mrs. Arnold table board and incidental comforts and conveniences as long as she lived, or until she got to the point where she needed hospitalization. Mrs. Arnold, however, was to pay all of her doctor's bills and hospital expenses and other expenses out of her own personal funds. The Fuquas agreed to pay the taxes, insurance and special assessments against the property and the costs of repairs and improvements. The contract was duly signed and acknowledged by the parties before a notary public. On the same day the contract was signed, Mrs. Arnold executed the will dated July 22, 1949.

Fuqua testified that both instruments had been prepared by Mr. Hindman Doxey, an attorney of Holly Springs. Fuqua stated that he accompanied Mr. Aubry French to Holly Springs a few days before the contract was signed to see Mr. Doxey about the preparation of the instruments for Mrs. Arnold. Fuqua stated that Aubry French read the contract and the will to Mrs. Arnold before she executed the instruments on July 22, 1949. He admitted that he and his wife read the contract and signed it and received a copy of the contract. Mrs. Arnold signed the will and delivered it to Aubry French to be put in the bank for safekeeping. No copy of the will was given to Fuqua and his wife. Fuqua stated that Mrs. Arnold continued to live in the home with him and his wife until her death, and that he and his wife furnished her table board and cared for her during that time. He stated on cross-examination that Mrs. Arnold paid for her own gas while she lived with him and his wife, and that she paid her own doctor's bills and laundry bills, and that he and his wife paid Mrs. Arnold no rent for the use of the property. Fuqua stated that he knew nothing about the execution of the codicil until the day after Mrs. Arnold's burial.

Charles Y. Fuqua, a brother of Fred T. Fuqua, and his wife, Mrs. Eva Nell Fuqua, testified that they were present on May 30, 1949, when Mrs. Arnold and Fred T. Fuqua and his wife discussed the matter of Mrs. Arnold purchasing a house and lot in Byhalia to be occupied by them as a home, and that the understanding was that Mrs. Arnold would purchase the house and lot and convey the same to Mrs. Alice E. Fuqua and Fred T. Fuqua, and that Mrs. Fuqua would furnish table board for Mrs. Arnold and see after her, and that Mrs. Arnold would make a will leaving her property to her daughter, and at the death of her daughter the property would go to Mrs. Fuqua.

Aubry N. French, who was vice president and cashier of the Citizens Bank of Byhalia, testified as the chief witness for the appellees. He stated that Hindman Doxey prepared the contract dated July 22, 1949, for Mrs. Arnold at his request. He stated that Mrs. Arnold had told him what the contract should contain, and that Fred T. Fuqua was present when he conferred with Mr. Doxey about the matter. He stated that he also told Mr. Doxey that Mrs. Arnold wanted him to write a will for her, and he told Mr. Doxey what Mrs. Arnold wanted the will to contain. Mr. Doxey prepared the contract and the will according to the instructions given and sent them to him two or three days later. The instruments were read to Mrs. Arnold and were approved and signed by her on July 22, 1949. He stated that Mrs. Arnold said to him, "Of course I can change the will at any time that I see fit." French also testified concerning the execution of the codicil on August 11, 1950.

Mr. Dudley Moore testified that Mrs. Arnold was able to walk and was up and around the house all the time until about two weeks before her death. She was never considered an invalid.

The inventory filed by the executrix showed that the testatrix owned personal property at her death, consisting of money on deposit and bonds, in the total sum of $5,562.58.

The chancellor dictated into the record his findings of fact and his conclusions of law. The chancellor stated that there was nothing in the record to indicate that either Mrs. Arnold or the Fuquas felt bound by the alleged oral contract of May 30, 1949. The chancellor pointed out that the parties had subsequently entered into a written contract which was pretty full and which provided in effect that Mrs. Fuqua was to do approximately everything that the so-called oral contract would have obligated her to do. The chancellor also pointed out that there were no unique services rendered by the

appellant. The chancellor found that no fraud had been perpetrated upon the appellant; and the chancellor held that the will was not irrevocable, and that Mrs. Arnold had the right to make the codicil or to revoke the will, if she saw fit to do so.

The appellants argue two points as ground for reversal of the decree of the lower court.

It is first contended that the codicil is void for the reason that the designation of ''the Methodist Church'' as legatee in the codicil is so indefinite and uncertain that the entire bequest must fail. But we think that this contention is unsound. ''A bequest will never be rendered void by an uncertain description of the beneficiary, if the name and description used in the will as applied to the facts and circumstances proved will identify such person from all other persons.'' Thompson on Wills, Third Edition, p. 412, par. 262. While it is true that the appellant alleged in her petition that ''the codicil is so vague and the term 'Methodist Church' so comprehensive that it is impossible to determine to whom said bequest was attempted to be made by the testatrix,'' the petition shows that there was a Methodist Church in the Town of Byhalia and that the appellees were the trustees of that church.

If the appellant expected to have the court declare the codicil void for uncertainty in the designation of the beneficiary, it was incumbent upon the appellant to show that there was no such organization as the ''Methodist Church,'' or that there were several organizations to which the name ''the Methodist Church'' might apply and that the church which the testatrix intended to benefit could not be identified with certainty from the language used in the codicil or by extrinsic evidence showing the facts and circumstances surrounding the execution of the codicil. Snider v. Snider, 70 S. C. 555, 50 S. E. 504, 106 Am. St. Rep. 754. And this the appellant failed to do. The appellant does not contend that there is no

such organization as "the Methodist Church." Neither does the appellant contend that the Methodist Church at Byhalia is not the church which the testatrix intended as the object of her bounty. The appellant simply says that no evidence was offered on behalf of the appellees to show that Mrs. Arnold meant the Methodist Church at Byhalia or any other Methodist Church. But the appellant filed the petition in this cause, and when it was admitted that there was a Methodist Church in the Town of Byhalia, where the testatrix resided, it could no longer be said that the codicil was void for uncertainty as to the beneficiary without proof of other facts. Tarwater, et al. v. Baptist Orphans' Home, et al., (1938), 173 Tenn. 409, 119 S. W. 2d 919. If it had been shown that there were other Methodist Churches in the community, additional evidence might have been required to determine which church was intended as beneficiary in the codicil, and such evidence would have been admissible for that purpose. "It is well settled that where the name and description of the donee given in a will apply with exactness to two or more persons, so that either would be entitled to take thereunder but for the existence of the other, extrinsic evidence is admissible to determine which was intended by the testator." 57 Am. Jur. 689, Wills, par. 1067; Gilmer v. Stone, 120 U. S. 586, 30 L. Ed. 734, 7 S. Ct. 689; Patch v. White, 117 U. S. 210, 29 L. Ed. 860, 6 S. Ct. 617, 710; Dunham v. Averill, 45 Conn. 61, 29 Am. Rep. 642; Hitchcock v. Board of Home Missions, 259 Ill. 288, 102 N. E. 741, Ann. Cas. 1915B 1; Skinner v. Harrison Twp., 116 Ind. 139, 18 N. E. 529, 2 L. R. A. 137. But it was not shown that there was any other Methodist Church in the community, and no additional proof was required to identify the church intended to be benefited.

 The will and the codicil show that Mrs. Arnold was a resident of the Town of Byhalia. The codicil bears a headline "Byhalia, Mississippi." The only change made by the testatrix in the execution of the codicil was that

she stated in the codicil that, if anything was left after the death of her daughter, she wanted it to go to the Methodist Church, "as I have never been financially able to give to the church as I wanted to, & I want Aubry French to see that it is carried out as I want it." Aubry French was Vice President of the bank at Byhalia and her business adviser. The resolution of the North Mississippi Annual Conference, a copy of which was attached to the appellant's petition, recited that Mrs. Arnold had been a lifelong member of the Methodist Church at Byhalia, and that she had resided at Byhalia for many years.

We think that the facts and circumstances disclosed by the record were sufficient to identify the Methodist Church at Byhalia as the church which the testatrix intended to benefit, and that the codicil was not void for uncertainty in the designation of the legatee. President, etc., of the Deaf and Dumb Institute v. Norwood, Executor of John Kelly, (N. C.), Busbee's Equity 65; Carter, et al. v. Balfour's Adm'r., 19 Ala. 814; Snider v. Snider, supra; Tilley, et al. v. Ellis, et al, 119 N. C. 233, 26 S. E. 29.

The appellant cites only two cases in support of her contention that the codicil is void for uncertainty in the designation of the beneficiary. Those two cases are Lefevre v. Lefevre, et al.; 2 Thomp. C. 330 (N. Y. S. Ct. 1873), and in In Re Zilkes Estate, 115 Cal. App. 63, 1 P. 2d 475.

We think that the Lefevre case was incorrectly decided by the General Term of the Supreme Court of New York. The opinion in the Zilkes Estate case is not in conflict with the views hereinabove expressed.

The next point argued by the appellant's attorneys is that the court erred in holding that the will of Mrs. Arnold, as originally drawn, was revocable and in holding that the purported codicil executed by Mrs. Arnold on August 11, 1950, entitled the appellees to the money

belonging to Mrs. Arnold's residuary estate at the time of her death. This contention is based upon the appellant's claim that the will executed by Mrs. Arnold on July 22, 1949, in which the appellant was named as the ultimate beneficiary after the death of the testatrix' daughter, was executed pursuant to the alleged oral agreement entered into by and between the parties on May 30, 1949.

This Court has held that under some circumstances a will executed in pursuance of a contract so to do may create a vested interest in the property with which it deals, and may therefore be irrevocable. Anding v. Davis, 38 Miss. 574, 77 Am. Dec. 658; Price v. Craig, 164 Miss. 42, 143 So. 694.

But in the case that we have here the chancellor found that the will was not executed in pursuance of any contract. The chancellor stated that there was nothing in the record to indicate that any of the parties felt bound by the so-called oral contract entered into on May 30, 1949. The testimony of Fred T. Fuqua, Charles Fuqua and Mrs. Eva Nell Fuqua all indicate that the parties to the alleged oral agreement of May 30, 1949, contemplated reducing the agreement to writing, and the contract was later reduced to writing and was signed by Mrs. Arnold and the appellant and her husband on July 11, 1949. As the chancellor pointed out, the written contract was definite in its terms and is presumed to have expressed the agreement of the parties. The contract provided in effect that Mrs. Fuqua was to do approximately everything that the so-called oral contract obligated her to do. There was nothing in the contract that obligated Mrs. Fuqua to care for Mrs. Arnold's daughter, in the event she should be living and should be released from the hospital after Mrs. Arnold's death. There was nothing in the contract to indicate that Mrs. Arnold had contracted to make a will in which she would

bequeath her personal property to Mrs. Fuqua after the death of her daughter.

The rule relating to the admission of parol evidence to add to or contradict written instruments is stated in 32 C. J. S., p. 784, Evidence, par. 851, as follows:

"It is a general rule that parol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict judicial or official records or documents, or written instruments which dispose of property, or are contractual in nature and which are valid, complete, unambiguous, and unaffected by accident or mistake. The rule, which is known as the parol evidence rule, is one of substantive law and not merely one of evidence; and it obtains in equity as well as at law."

In the case of Kendrick, et al. v. Robertson, et ux, 145 Miss. 585, 111 So. 99, the Court had under consideration a bill of sale conveying certain personal property. No reference was made in the bill of sale to good will or a lease of the premises where the property was situated. In a suit involving the right of possession of the premises testimony was admitted which tended to show that a portion of the sum paid for the personal property was intended to compensate the appellees for the lease and good will of the business, and that the failure to include this lease and good will in the conveyance was due to carelessness and oversight. But the Court in its opinion, said:

". . . the rule that the terms of a written contract or conveyance cannot be varied or added to by parol evidence is not merely a rule of evidence, but is one of substantive law, and, in measuring the rights of the parties to a written contract or conveyance, which, on its face, is unambiguous and expresses an agreement complete in all of its essential terms, the writing will control. Jones, Commentaries on Evidence, Vol. 3, par. 434; Wigmore on Evidence, Vol. 4, pars. 2400 and 2425."

In the case of Edrington, et al. v. Stephens, 148 Miss. 583, 114 So. 387, the Court reaffirmed the rule stated above, and again held that the terms of a written contract could not be varied or added to by parol evidence.

In the case that we have here the formal contract which the parties executed on July 22, 1949, had been prepared by an attorney and was fully read and understood by them at the time it was signed. The contract showed upon its face that the purpose which the parties had in mind in executing the contract was to define in writing the respective rights and obligations of each with reference to the subject matter. The will was not mentioned in the contract and nothing was said in the contract about the personal property that Mrs. Arnold might own at the time of her death. The promises that Mrs. Arnold made in the formal written contract could not be enlarged by parol testimony concerning the alleged oral agreement to make a will. The decision of the Court in the case of Johnston v. Tomme, 199 Miss. 337, 24 So. 2d 730, is of little help in this case. As the chancellor pointed out in his opinion, in the Johnston v. Tomme case, the complainant relied on an oral agreement. There was no written contract defining the respective rights and obligations of the parties, as in this case. The consideration for the alleged oral agreement to make a will in the Johnston v. Tomme case was the rendition of unique and necessary personal service to the testator, which services had been performed by the complainant. In this case there were no unique services, and the services rendered by the appellant were the services which she had obligated herself to render under the terms of the written contract. After a careful study of the record we are unable to say that the chancellor erred in holding that the will was not irrevocable, and that Mrs. Arnold had the right to make the codicil.

The decree of the lower court is therefore affirmed. Affirmed.

*Hall, Lee, Arrington, Ethridge* and *Gillespie, JJ.,* concur.

*McGehee, C. J.,* took no part.

HOLMES, J., dissenting.

It is with deference that I dissent from the decision of the majority in this case.

The controlling facts are undisputed. We are, therefore, not confronted with the rule that the chancellor's finding on conflicting evidence will not be disturbed unless manifestly wrong. It is the chancellor's conclusions of law as drawn from the undisputed facts that appear to me to be in error. These facts may be briefly stated.

In May, 1949, Mrs. Antionette Arnold was living in the Harrison Hotel in Byhalia, Mississippi. The appellant, Mrs. Alice E. Fuqua, and her husband, Fred T. Fuqua, were living in the same hotel. Mrs. Arnold and Mrs. Fuqua were not related. Mrs. Arnold was a widow and about 89 years of age but was physically well and mentally alert. She desired someone to live with her in the same home and care for her and furnish her table board and other incidental comforts and conveniences. She had been discussing such an arrangement with the Fuquas and had proposed that she would purchase a home and deed it to them, and would make a will devising and bequeathing to them her property subject to a life estate in her daughter, who was an inmate of the Mississippi State Insane Hospital, in consideration that all of them would occupy the home together, and that the Fuquas would care for her and furnish her table board and such incidental comforts and conveniences as her needs might require so long as she should live. On May 30, 1949, she entered into an oral agreement with the Fuquas whereby she agreed to purchase a home in By-

halia and deed it to the Fuquas, and make a will devising and bequeathing her estate to the Fuquas, subject to a life estate in her daughter, in consideration that they would occupy the home together and that the Fuquas would furnish her board and incidental comforts and conveniences so long as she lived. Mr. Fuqua requested that this agreement be reduced to writing. Pursuant to the agreement, Mrs. Arnold purchased the Clyde Neely home in Byhalia and obtained a deed thereto on July 7, 1949. On the same day, she conveyed the home to the Fuquas, reserving a life estate therein. She then went to Mr. Aubrey French, vice president and cashier of the Citizens Bank of Byhalia, and related the agreement which she had made with the Fuquas and requested him to prepare the papers reflecting the agreement, and told him also that she wanted a will drawn and advised him how she wanted to dispose of her property, and said that of course she could change the will at anytime she saw fit. Mr. French advised her that she should have a lawyer to do this and, after some conversation, suggested Hindman Doxey. Mr. French went with Mr. Fuqua to Mr. Doxey and advised Mr. Doxey of the agreement as related by Mrs. Arnold, and requested him to prepare the necessary papers. Mr. Doxey prepared a contract and a will and returned both papers to Mr. French, and Mr. French then arranged a meeting with Mrs. Arnold and the Fuquas and at this meeting he read the will and contract to them and they approved the same. Both the cotract and the will bore the same date, July 22, 1949, and upon the execution of the same, they were left with Mr. French to be kept at the bank for safekeeping. The will referred to Mrs. Arnold's conveyance of the home to the Fuquas and confirmed the same, and bequeathed to Mrs. Fuqua all of her personal property remaining undisposed of upon the death of her daughter. The contract provided for the rental of the home to the Fuquas with the right in Mrs. Arnold to

occupy the same with the Fuquas, and obligated the Fuquas to furnish to Mrs. Arnold table board and also ordinary and incidental comforts and conveniences so long as the said Mrs. Arnold should live. The obligations devolving upon the Fuquas were fully and faithfully performed.

On August 11, 1950, after the agreement had been in effect and complied with by the Fuquas for more than a year, and without the knowledge of the Fuquas, Mrs. Arnold wrote and executed in her own handwriting what purported to be a codicil to her will, whereby she undertook to direct that such of her money as remained undisposed of upon the death of her daughter should go to "The Methodist Church."

Mrs. Arnold's daughter died in the month of December, 1951, and Mrs. Arnold died on April 20, 1952. Throughout the period of time prior to the death of Mrs. Arnold, the Fuquas fully performed and complied with the agreement.

The contract and will contained recitals showing their connection and relation with each other and with the deed, and reflected in writing the material terms of the oral agreement.

The following recital appears in the contract:

"For that whereas Mrs. Antionette Arnold is a widow and desires someone to live in her home and be companion to her and to provide her with board and table fare as a member of the family;

"And whereas the said parties of the second part are now living in said home and the relationship between all of said parties have been pleasant and it is expected that the said relationship will continue to be pleasant and the said party of the first part having heretofore conveyed the home owned by her in the Town of Byhalia unto the parties of the second part, reserving unto her-

self the right to the use, control and occupancy of said home for and during the term of her natural lifetime. . . .

"And the said parties hereto having fully agreed on all matters: . . ."

The following appears in the will as a part of Item II thereof: "The said Fred T. Fuqua and wife, Mrs. Alice E. Fuqua, have promised to live with me and I am confident that our relationship will be pleasant and cordial and, therefore, I will, devise and bequeath unto the said Fred T. Fuqua and wife, Mrs. Alice E. Fuqua, the house and lot located in Byhalia, Marshall County, Mississippi, purchased by me from Clyde Neely and conveyed unto the said Fred T. Fuqua and wife, Mrs. Alice E. Fuqua on the............................day of July, 1949, it being the purpose of this provision to reaffirm my expressed intention and desire for them to have full title, possession and right of possession to said property upon my death."

The three instruments, that is to say, the deed, the contract, and the will, when read together, represent in writing and carry into effect the identical terms of the oral agreement.

It is the holding of the majority opinion that the written contract represented the entire agreement between the parties and that it contained no provision to indicate that Mrs. Arnold obligated herself to make a will bequeathing her personal property to Mrs. Fuqua upon the death of Mrs. Arnold's daughter. It is, therefore, the conclusion of the majority opinion that the admission of oral evidence of such an obligation on the part of Mrs. Arnold would do violence to the rule relating to the admission of parol evidence to add to or contradict a written instrument. This holding and conclusion of the majority are, in my humble opinion, not justified by the undisputed facts of this case. I think the record shows clearly that the written contract did not represent the

entire agreement between the parties. The oral agreement of the parties was represented in writing by the deed, the contract, and the will. Hence there is no occasion to invoke the well recognized parol evidence rule under the facts of this case.

It is my view, stated with deference, that the oral agreement between Mrs. Arnold and the Fuquas, about which there is no dispute, was reduced to writing and incorporated in three instruments, namely, the deed from Mrs. Arnold to the Fuquas, the contract, and the will. The incorporation of the agreement in three instruments was, no doubt, the method adopted by the lawyer to reduce the agreement to writing after he had been advised by Mr. French of the terms of the agreement as related to him by Mrs. Arnold.

The binding effect of the agreement is not diminished by the fact that it is represented by three written instruments.

"A binding agreement may be collected from various different writings provided there is no conflict between such writings in respect of the terms, parties, and the like." 17 C. J. S., Sec. 58, page 408.

This Court has held that a memorandum to meet the statute of frauds may be in several different writings necessarily connected with each other. Central Shoe Company v. J. P. Conn and Co., et al., 160 Miss. 151, 133 So. 126; Fisher v. Kuhn, 54 Miss. 480.

In this case, the three written instruments, namely, the deed, the contract, and the will, were identical as to terms and parties with the oral agreement of the parties and were designed to accomplish that which was in contemplation of the parties to the oral agreement. It was not an accident, nor was it coincidence, that the three written instruments incorporated exactly the terms of the oral agreement. It is manifest from the undisputed facts that this was designedly done for the purpose of reducing to writing that to which the parties had previously agreed orally. The will itself makes particular reference to the

deed executed by Mrs. Arnold to the Fuquas and to the fact that the Fuquas had promised to live with her and the bequeathing of the property to the Fuquas, who were wholly unrelated to Mrs. Arnold, can be explained upon no other reasonable ground than that it was the fulfillment of the agreement as represented by the three instruments.

I attach no importance to Mrs. Arnold's statement to Mr. French when she directed the will to be drawn that she could change it whenever she saw fit. This statement out of the presence of the Fuquas could not affect her agreement which was reduced to writing and incorporated in the deed, the contract, and the will. It might well be that she had in mind changing her will if the **Fuquas failed to carry out their contract.** The Fuquas did not, however, fail to carry out their contract, but faithfully performed and complied with the same.

The case on its undisputed facts is, therefore, one where Mrs. Arnold made an oral agreement with the Fuquas which was subsequently reduced to writing and incorporated in three written instruments, whereby she agreed to will her personal property to the Fuquas upon the death of her daughter in return for care and table board to be furnished her by the Fuquas, which agreement was performed by Mrs. Arnold in making her will accordingly, and by the Fuquas in fully performing their obligation.

It is my view, therefore, that the will was irrevocable and that the so-called codicil was ineffective to change it. It was expressly held by this Court in Johnston v. Tomme, 199 Miss. 337, 24 So. 2d 730, that even an oral agreement to make a will covering real and personal property in return for care of the testator, where such agreement has been performed on the part of the promisee, is valid and binding and irrevocable, and that to permit the same to be revoked would constitute a fraud upon the promisee. This case was expressly approved by this Court in the case of Denson, et. al. v.

Denson, 203 Miss. 146, 33 So. 2d 311, where the Court said of the Tomme case that it was sound and equitable. It is my opinion, therefore, that for the reasons hereinbefore stated the decree of the court below should be reversed and judgment entered here for appellant.

There is, however, another reason why I think the decree of the court below should be reversed and judgment entered here for the appellant. The codicil designates as beneficiary "the Methodist Church." I think this designation is so indefinite and uncertain as to render the codicil invalid. In 57 Am. Jur., Sec. 35, page 59, appears the following:

"While it is not necessary that a testamentary beneficiary be named in the will, it is essential to a valid bequest or devise that the person or organization which the testator intends to benefit be clearly and certainly identified by the express language of the will or, at least, be capable of identification from extrinsic circumstances in accordance with the maxim, 'id certum est quod certum reddi potest,' since it is clear that, at least at common law, there cannot be a valid bequest to an indefinite person."

In 40 Cyc. 1445, it is stated that a beneficiary under a will, in order to take thereunder, must be designated with such certainty that he can be readily identified and distinguished from every other person, otherwise the devise or bequest is void for uncertainty. It cannot be ascertained from the codicil itself what Methodist Church was intended, that is to say, whether it was intended to designate the Methodist Church in Byhalia, or a Methodist Church in some rural section of some county, or the Methodist Church in some neighboring town, city, or community. It cannot be ascertained from the codicil whether there are one or more Methodist Churches in Byhalia, or in the county, or in neighboring communities. It would have been proper for the appellees to offer evidence to render more certain the beneficiary, but this was not done. I do not agree with the majority opinion

that it was incumbent upon the appellant to show that there was no such organization as "the Methodist Church," or that there were several organizations to which the name "Methodist Church" might apply, or that the church which the testatrix intended to benefit could not be identified from the language used in the codicil. The uncertainty and indefiniteness in the designation of the beneficiary appear in the codicil. The burden was upon the proponents of the codicil to offer evidence of extrinsic circumstances to identify and render certain the beneficiary intended to be benefitted. This the appellees failed to do and from the codicil itself it cannot be ascertained what Methodist Church was intended to be benefitted by the testatrix. It could be any one of numerous Methodist Churches throughout the state. I am of the opinion that the codicil is void because of uncertainty and indefiniteness in the designation of the beneficiary, and that the validity of the will is unaffected by the codicil. Hawkins v. Duberry, 101 Miss. 17, 57 So. 919. For this further reason, I think that the decree of the court below should be reversed and judgment entered here for the appellant.

I am authorized to say that Justice Roberds joins in this dissent in so far as it expresses the view that the codicil is invalid because of uncertainty and indefiniteness in the designation of the beneficiary.